*MORRISON & AL.* vs. *TRUDEAU.*—12 *Martin,* 543.

Third parties to an act, are those who are not parties to an instrument by which their interest in the thing conveyed, is affected.

The vendor of an *immoveable* who does not record his lien in the parish where the object is situated, loses his privilege on it. A mortgage recorded without an order of the judge, operates as notice to third parties.

APPEAL from the court of the first district.

PORTER, J. delivered the opinion of the court. Three of the creditors of Smith's estate demand that they should be placed on the tableau of distribution, as privileged and mortgage creditors, and be paid in preference to others, *viz:* the heirs of Trudeau, who are the vendors of real estate, found in the bankrupt's possession at the time of his failure; and James Morison, and James Whitehead, who assert they have obtained mortgages on it.

The heirs of Trudeau, in the year 1816, sold a plantation and slaves, to Smith, the insolvent, situate in the parish of St. Charles. The act of sale was passed before the parish judge of the parish of St. James, and a special mortgage was expressed in it. On the 17th of March, 1821, without any order of the judge, this instrument was recorded, in the parish where the property is situated. The purchase money, expressed in the deed of conveyance, was one hun-

dred and twenty five thousand dollars; fifty thousand dollars of which sum were paid Smith previously to his failure. Since which the heirs, under an order of seizure, have caused the plantation and slaves to be sold, and have become the purchasers themselves, for eighty thousand dollars.

Morrison's claim is founded on an act, passed in the state of Kentucky, which pursues the common law form of giving a mortgage. The deed expresses that Smith has sold the premises to Morrison, and contains a clause that in case the vendor should pay the vendee, the sum of fifty thousand dollars, the sale is to be void and of no effect.

Whitehead's arises from a judgment given in this state, and duly recorded in the office of the parish judge of the parish of St. Charles, on the 17th May, 1821.

In the argument of the case, the two last mentioned creditors have united in their efforts to destroy the claim of Trudeau; which, if admitted, leaves nothing for either. We shall therefore first proceed to examine it.

A most extensive range has been taken in the discussion, and as is generally the case, in causes of this magnitude, questions have been raised

East'n District
*June,* 1823.

MORRISON & AL
*vs.*
TRUDEAU.

and examined, which are not necessary to be considered in the decision. The validity of the pretensions advanced by the vendor, will, we think, be found to depend entirely on the meaning to be given to particular expressions in one of our statutes.

In support of his claim, it has, however, been pressed on us, that his right is one of the most sacred nature, which cannot be touched, or impaired, without violating the principle of property itself. We confess to be unable to see the subject in that point of view. The right of the vendor to be paid comes from the law, as does also the mode of carrying that right into effect; his claim possesses therefore, no higher character than any other; except so far as the law has conferred it. To enter into an enquiry on other grounds, would lead, we apprehend, to any thing but a satisfactory result. If gone into, cases might be readily supposed, where the demands of other creditors would have as strong equity to recommend them. A man who lends his money, to enable the purchaser to make the first payment due on the price of a tract of land, in reason, in justice, and in *foro conscientiæ*, has as much right to be paid out of the proceeds of the land, as the

East'n District.
June, 1823.

MORRISON&AL
vs.
TRUDEAU.

vendor, who asserts a privilege for the balance due him. The authorities cited by the counsel in behalf of the other claimants establish, that neither at Rome, nor in Spain, did the vendor, who sold on a credit, retain a privilege on the property, if the sale was followed by delivery. In France at this day, the privilege of the vendor is lost, if not recorded in the manner pointed out by the particular legislation on this subject, *Code Nap.* 2108. These shew in a most satisfactory manner, in what light the legislators of those countries viewed this preference, and how entirely it is the creature of positive law.

It has been contended that the mortgagees are not third parties in the sense of the law, and that they stand in no better situation with respect to the force, and validity of the mortgages, than the insolvent himself could. We understand by the term *third parties*, all persons who are not parties to the contract, agreement, or instrument of writing, by which their interest in the thing conveyed, is sought to be affected. It is not pretended here, that Morrison was a party in the original sale, and there appears to be as little ground for contending that he has become so since, or that he stands in the same place as Smith, his vendor. The purchaser of

East'n District.
June, 1823.

MORRISON & AL
vs.
TRUDEAU.

property may, it is true, by subrogating another person in his right, put him so entirely in his place, that he will have no higher claims on it, than he had. But it is clear, that under our law, a vendee may acquire a title to real estate, exempt from the burthens which were attached to it in the hands of the person from whom he purchased, or discharged from the privileged claim which other persons had on it. This position my be illustrated by supposing in the present case, that the heirs of Trudeau had sold the property by a deed of conveyance, which negatived the fact of any lien, mortgage, or privilege being retained. Under such circumstances, if Morrison and Whitehead had purchased the land, they would have held it free from the incumbrance of this claim, though in the hands of Smith, it would have been subject to it. For the purpose then, of shewing tat, that the vendors had abandoned their right, or lost it by any other means, the second purchaser would be a third party. We are unable to see any difference between a vendee, and a mortgagee, and we conclude that as a vendor may by his own act, give up, or lose his privilege, it follows as an undeniable consequence, that those who have subsequently ac-

East'n District.
June, 1823.

MORRISON &AL
vs.
TRUDEAU.

quired an interest in the property, should have a right to shew that the lien which would have affected it in their hands, has been lost to him, in whose favor it existed.

We now come to what we consider the great question in this case ; and that is, whether the lien which the heirs of Trudeau set up, as attaching on the property sold by them, was one of those, which the legislature, by the act of 1813, required to be recorded. The enquiry lies in a narrow compass, and as already observed, on a correct interpretation of a single phrase used in that act, will depend the respective rights of the parties before us.

The expressions in the statute are *"all liens, of any nature whatever, having the effect of a legal mortgage, which shall not be recorded agreeably to the provisions of this act, shall be null and void."* To arrive at a just conclusion, in construing this clause, it becomes necessary to examine what is the effect of a legal mortgage, and that once ascertained, to enquire next in what does the privilege differ from it. As the law itself has spoken on this subject, it is better to refer to it than to trust to any deductions of ours. According to the civil code, the effect of a mortgage is, that the mortgagee has

East'n District.
*June*, 1823.

MORRISON& AL
*vs.*
TRUDEAU.

the benefit of being preferred to the mere chirographic creditors, and even to the other mortgagees, who are posterior to him in the date of the mortgage, or its registry, *Civil Code*, 460, *art.* 9. The same authority tells us the privilege is the right, which the nature of a debt gives to a creditor, and which enables him to be preferred before other creditors, even those who have mortgages, although anterior in time. *Civil Code*, 368, *art.* 68. It is difficult then, to perceive what is the difference in their *effect*, except that the privilege is of a higher nature. They both confer a right, which gives a preference over other creditors,—they both attach on the property of the debtor, and they are both liens, given by the law, independent of the express consent of the parties.

But it is argued, that a privilege has not the effect of a legal mortgage, because the latter operates on all the property of the debtor ; the former only on a particular portion. We do not see what difference this makes, on the part to which the lien attaches; the effect on it is the same, whether other parts of the debtor's property be liable to it, or not. The object of the law was to secure third parties against latent incumbrances on the thing in which they *bona*

East'n District.
*June*, 1823.

MORRISON & AL.
*vs.*
TRUDEAU.

*fide* acquired a right. It is only the effect of the lien on the property acquired, that can form the proper subject of enquiry, and it must be by its operation on the thing alienated, that we can correctly ascertain whether or not, the lien has the same force, as a legal mortgage would have had.

If this should appear doubtful, and we recur, as we are directed to do, in cases where the expressions of the legislature are not clear, to the reason and spirit of the law, and the causes which induced the legislature to enact it, *Civil Code*, 5, *art.* 14, a strong argument is derived in favor of including the vendor's privilege as one of those liens, which were directed to be recorded. The causes, which induced the passage of that law, were latent claims, attaching to property in the hands of innocent persons, producing great injustice in particular cases, and doing an injury to the public by checking the free transfer of property. The object of passing the act was to remove these evils, and a construction, which would leave them in force, must be resisted. Now, the privilege of the vendor, which is not found recorded in the parish, where the property is situated, is just as much within the spirit of the law, as the lien

East'n District.
June, 1823.

MORRISON &AL
vs.
TRUDEAU.

of a wife for her dower.   It produces as great an injury, and we are bound to believe that as it made a part of the evil, it was intended to be embraced by the remedy.

It has been also urged, that if it had been in the contemplation of the legislature to include the vendor's privilege, among those which are to be recorded, they would have used the expression, "all liens whatsoever," not "all liens having the effect of a legal mortgage." It is true the former expressions wou'd have had the effect stated, and would, perhaps, have presented less ambiguity, but the not using them, does not by any means prove that the words, found in the act, have not the same meaning. Indeed we draw, from the very terms which the legislature have chosen, a strong argument in favor of the idea, that the claim of the seller of immoveable property, was to be embraced by them.   For, if they had intended to confine the necessity of recording, to legal mortgages alone, it may be fairly urged, they would have followed the natural mode of conveying that idea, and said that all legal mortgages whatever, that were not recorded agreeably to the provisions of the act, should be null.   Instead of which, they have

declared that all liens whatsoever, having the
effect of a legal mortgage, should be recorded.
From which, we think, the inference is irresisti-
ble, that they conceived there were liens, which
*though not called legal mortgages, had the effect
of them*; that they intended to include these
liens, and to guard against their operation.
The question, to be sure, recurs were privileges
meant by the expression " all liens"? An at-
tentive consideration of the law satisfies us they
were. *Conventional* and *judicial* mortgages had
already been provided for ; the terms used, we
have just seen, meant something more than
*legal mortgages ;* tnere remained then no other
liens to be acted on but *privileges*, and it was
to embrace them these words were used ; or
else they were used to no purpose. But this,
the known rules of construction forbid us to
presume. 6 *Bacon*, 380.

Nor is it a matter of surprise that the legisla-
ture should have conceived that, by the expres-
sions used, they acted on liens, such as that
now under examination. The discussion on
this subject leaves it as a very doubtful ques-
tion in our minds, whether the privileged mort-
gage be any thing more or less, than a legal
mortgage. But without intending to decide that

East'n District.
June, 1823.

MORRISON &AL
vs.
TRUDEAU.

question, it is certain that if they be different, a great deal of confusion exists in the Spanish law, respecting them, and that the distinction is not well settled in our own. The counsel have referred us to the *Curia Philipica*, where the very highest privileges known to our laws are called tacit or legal mortgages. *Curia Phillip. lib. 5, chap. 3, Hypoteca,* 364, *art.* 31, 32, 33, 34 Febrero also designates them by the same name. *Juicio de concurso, lib. 3, chap. 3, sec.* 1, *no.* 101. So late as the year 1817, we find the general assembly of the state, denominating the lien of a builder, " *a privilege,* or *legal mortgage.*" The legislature who passed the act of 1813, then, it may be readily believed, did not understand the privileged mortgage, as having a different effect from the legal one. Indeed they have furnished us with conclusive evidence to the contrary. For in the third section of that very act, they state that minors, insane persons, and absent heirs, shall continue as heretofore to have a *tacit and privileged mortgage,* on the property of their tutors, curators, and administrators, according to the principles established by the digest of the civil law.

The cases, heretofore decided in this court,

East'n District.
June, 1823.

MORRISON&AL
vs.
TRUDEAU.

under the act of the legislature, have been referred to, but although the point now made, was not brought forward for decision in them, yet, the opinions given, in those cases, intimated views of the question, adverse to the pretentions now advanced by the vendor. The first was *Lafon* vs. *Sadler*, (4 *Martin*, 476,) in which it was held that the privilege of the vendor need not be recorded, because his lien existed independent of any instrument of writing. The court, however, stated that if a written contract had been necessary, to establish the plaintiffs' right, to recover, the defendant might, perhaps, have resisted its introduction, unless recorded pursuant to law. In the year 1817, the legislature provided that the builder must enter into contracts in writing, for all sums above five hundred dollars, and have them recorded, or cease to enjoy either a tacit mortgage, or privilege. The case of *Jenkins* vs. *Nelson's syndics*, 11 *Martin*, 437, was a decision on a contract governed by these statutes, and the court there said that the writing, establishing the privilege, was perfectly of the nature of those mentioned in the act of 1813, in which no mortgage is stipulate, but in which the law raises a tacit one.

East'n District.
June, 1823.

Morrison & al
vs.
Trudeau.

We therefore, conclude, that the privilege of the vendor, to have effect against third parties, must be recorded in the parish where the property is situated, and that in this case, the heirs of Trudeau can only be paid in preference to other creditors who have mortgages, posterior to the time their lien was put on record.

The next question which the case presents, is, whether it was put on record, pursuant to law. It has been already stated, that the order of the judge is wanting, and in consequence of this defect, Whitehead contends that his mortgage, which was duly enregistered in the office of the parish judge, two months before, is entitled to a preference.

The article of our code, which it is contended, requires this formality, on pain of nullity, after declaring that mortgages shall have effect against third persons, being of good faith, from the day they are recorded, provides " that this recording shall not be made after the expiration of the legal term, without an order of the court given for that purpose, *que sur un ordre du juge, rendu a cet effet.*

There is some difficulty in knowing what court, or judge is meant by these terms, bnt admitting that it is the district judge, or district

East'n District.
June, 1823.

MORRISON &AL.
vs.
TRUDEAU.

court, we are of opinion, that if the instrument be recorded without their order, that it operates as a notice to third parties, and that all the objects of the law are satisfied by it. The clause just cited, is merely directory to the keeper of mortgages, and if it were not introduced for his protection, it is difficult to see for what reason such a formality was prescribed. The mortgage is entirely distinct from it, its validity is independent of it; and although the officer, whose duty it was to receive the instrument, might have refused to enregister it without the order, yet if he did choose to run the risk of doing so, we see nothing in the law, which authorises us to say that a *bona fide* mortgage, thus put on record, shall not operate as a notice, to persons who go to those records in order to ascertain what liens are on the property. The law does not direct the judge's order to be recorded, with the mortgage.

We have lastly to enquire into the validity of the instrument by which Morrison claims to be paid as a mortgagee creditor. It is objected that it has not the form required by our laws, for acts of mortgage, and that instruments of writing, tending to affect real estate, must pursue the *lex loci rei sitæ*. This ques-

tion we find it unnecessary to determine, for if the instrument be not a mortgage, it is a sale of the premises. We shall give it effect therefore, in the former character, because the party claiming the benefit of it, has relied on it as such. In this way too, it will be least burthensome to the other creditors, and will enable us to give effect to the evident intention of the parties.

It is therefore ordered, adjudged and decreed, that the judgment of the district court be annulled, avoided and reversed, and that the parties to this suit be placed on the tableau of distribution of J. K. Smith, and paid as follows, that is to say, Emilie Trudeau, minor heir of Zenon Trudeau, the sum of five thousand, three hundred and fifty seven dollars, fourteen and a half cents, with interest on the one third of that sum, from the first of April, 1820, on one other third part of the same, from the first of April, 1821, and on the remaining third, from the first of April, 1822, it being the one seventh of the half of the money due for the plantation, sold by the heirs of Trudeau, to J. H. Smith; that James Morrison be placed in said tableau, as a creditor, for the sum of fifteen

thousand dollars with interest, at six per cent. from the 31st. of March, 1820, until paid, and costs of suit. That the widow, and other heirs of Zenon Trudeau, be placed there as creditors for the balance due on the price of the plantation, after deducting the sum of five thousand, three hundred and fifty seven dollars, fourteen and a half cents, coming to the minor, that is to say, for the sum of sixty nine thousand, six hundred and forty two dollars, and eighty six cents, with interest, at six per cent. until paid, on the one other third of said sum, from the first of April, 1820, on one other third part of said sum, from the first of April, 1821, and on the remaining third, from the first of April, 1822. And lastly, that James Whitehead be placed thereon as a creditor for fifteen thousand, four hundred and twenty two dollars, and ninety four cents, with interest, at the rate of six per cent. from the 17th of June, 1820, until paid, that the said creditors be paid in reference to the order beforementioned, that is to say, first Emilie Trudeau, second, James Morrison third, the widow and heirs of Z. Trudeau, and lastly, James Whitehead, and it is further ordered, adjudged, and decreed, that the appellee pay the costs of the appeal.

East'n District.
June, 1823.

MORRISON& AL
vs.
TRUDEAU.

*Hennen & Hawkins* for the plaintiffs, *Duncan* for the defendant.